UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JANA M. ALIG MIELCAREK,

  Plaintiff,

v.

DERRELL L. JACKSON, *et al.*,

  Defendants.

Case No. 2:11-CV-00255
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Sheila T. Gregory, Ph.D. ("Gregory"), Dissertation Coaching Services ("DCS"), and Clark Atlanta University, Inc.'s ("CAU") Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and Improper Venue. (ECF No. 38.) For the reasons that follow, Defendants' Motion is **GRANTED**. Additionally, the Motions to Dismiss for Failure to State a Claim of Gregory, DCS, and CAU, are **DENIED WITHOUT PREJUDICE** as moot in light of this Opinion and Order. (ECF Nos. 36, 37.)

### I. Background

Plaintiff brings the instant action against six Defendants alleging claims pursuant to the Copyright Act, 15 U.S.C. § 501 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Ohio statutory and common law. Plaintiff, an Ohio resident, received her Ph.D. in Education from The Ohio State University in 2003. While in pursuit of her Ph.D., Plaintiff wrote a dissertation entitled *A Model of School Success: Instructional Leadership, Academic Press, and Student Achievement* (hereinafter "*A Model of School Success*"). Plaintiff published *A Model of School*

*Success* in October 2003 and registered the copyright in *A Model of School Success* in February 2004. (Am. Compl. ¶¶ 43–44, ECF No. 31; Ex. 1, ECF No. 31-10.)

Plaintiff's claims stem from the actions of Defendant Derrell L. Jackson ("Jackson"). Jackson, a Georgia resident, was a graduate student at CAU and received his Doctor of Education from CAU in 2008.[1] Jackson then became a faculty member at CAU. While pursuing his graduated degree, Jackson prepared a dissertation entitled *Teacher Perceptions of Principals' Leadership Influence on Ninth Grade Student Outcomes* (hereinafter "*Teacher Perceptions*"). Plaintiff maintains that *Teacher Perceptions* contains excerpts both derived from and directly copied *A Model of Success* without citation. (Am. Compl. ¶¶ 58–64.) Additionally, Plaintiff contends that Jackson later wrote a book, *Are Schools Creating a Permanent Underclass*, which also copied, and did not credit, *A Model of Success*.[2] (*Id.* at ¶¶ 95–101.) Based on these actions, Plaintiff brings several claims against Jackson including copyright infringement.

Plaintiff also brings various claims against the moving Defendants. Defendant Gregory is a member of the CAU faculty and a Georgia resident. Gregory served as the academic advisor to Jackson while he was preparing his dissertation. Plaintiff asserts that Gregory assisted Jackson in preparing and distributing his dissertation. (Am. Compl. ¶¶ 71–72.) Additionally, Plaintiff maintains that Gregory acted negligently in failing to check Jackson's dissertation for plagiarism and allowing the dissertation "to be accepted, published and distributed . . . ." (*Id.* at ¶¶ 73–74, 171–72.) According to Plaintiff, "Gregory was conscious of but indifferent to [Jackson's]

---

[1] CAU is a non-profit corporation that operates a private university in Atlanta, Georgia. (Am. Compl. ¶ 12.)

[2] Plaintiff indicates that Defendant Rathsi Publishing LLC published this book. (Am. Compl. ¶ 90.)

2

infringing activity." (*Id.* at ¶ 75.) Finally, Plaintiff contends that Gregory has been doing business under the name of DCS in providing research assistance to students and doctoral candidates. (*Id.* at ¶ 10; *see also* Ex. D., ECF No. 31-4.) Accordingly, Plaintiff maintains that DCS is the alter-ego of Gregory. (*Id.*)

As noted above, Defendant CAU is a private university located in Atlanta, Georgia. CAU is a member of the Atlanta University Center, a cooperative library serving CAU, Morehouse College, and Spelman College. (Am. Compl. ¶ 21.) The Atlanta University Center subscribes to a service called "Digital Commons," which enables the institutions to publish scholarship on the world wide web. (*Id.* at ¶ 20.) According to Plaintiff, Digital Commons allows Atlanta University Center members to access the scholarly works of other Atlanta University Center members.[3] (*Id.* at ¶ 22.) Plaintiff asserts that CAU assisted in the distribution of Jackson's dissertation, including through placement of the dissertation in the Digital Commons. (*See, e.g.*, *id.* at ¶ 78.) Plaintiff also maintains that although CAU subscribed to plagiarism prevention services, the employees of CAU failed to use such services to detect Jackson's plagiarism.[4] (*Id.* at ¶¶ 50–51, 184.) Plaintiff maintains that pursuant to the doctrine of respondeat superior CAU is liable for the conduct of both Jackson and Gregory. (*See, e.g.*, *id.* at ¶ 133.) Additionally,

---

[3] Defendants' jurisdictional discovery responses indicate, however, that full text access to the Digital Commons, at least for CAU members, is restricted to use inside the library and that there is no external web access to Digital Commons material. (Def.'s Resp. Produc. Req. 20, ECF No. 75-1.)

[4] Following communication with Plaintiff in late 2010, CAU ultimately conducted an investigation of Jackson's conduct. (*See* Ex. T, ECF No. 31-22.) Following investigation, the Dean of CAU's School of Education concluded that Jackson had committed plagiarism and recommended the sanctions of revocation of Jackson's doctoral degree and removal of Jackson's dissertation from library records. (*Id.*)

Plaintiff maintains that CAU is liable for either vicarious or contributory infringement. (*See id.* at ¶ 134.)

Defendants Gregory, DCS, and CAU move for dismissal due to a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[5] Following Defendants' Motion, the Court granted Plaintiff's unopposed request to conduct limited discovery on the issue of personal jurisdiction. (*See* ECF No. 42.)

Defendants maintain that they do not have sufficient contacts with the state of Ohio to satisfy either Ohio's long-arm statute or the United State Constitution's Due Process Clause. Gregory stresses that she is a resident of Georgia and has never lived in, worked, nor had other contacts with Ohio. (Gregory Aff. ¶¶ 5–9, ECF No. 25-1.) Additionally, Gregory submits that DCS is not an independent entity, but instead a name she uses for her consulting services to non-CAU students. (*Id.* at ¶ 4.) Gregory further provides that DCS has never had a client from Ohio and does not advertise or otherwise conduct business in the state.[6] (*Id.* at 10–16.) Finally, Gregory indicates that Jackson was never a client of DCS. (*Id.* at 18.) CAU, for its part, submits that it does not direct business—nor does it direct print or media advertising—towards Ohio. (*See, e.g.*, Brown Aff. ¶¶ 5–7, ECF No. 25-2; Adams Aff. ¶ 4, ECF No. 24-4.) Moreover, CAU provides that its website does not specifically direct content toward Ohio residents. (Brinson Aff. ¶ 5, ECF No. 25-7.)

In opposing dismissal—following discovery—Plaintiff provides evidence regarding

---

[5] Defendants also maintain that this Court is not the proper venue. Because the Court agrees that personal jurisdiction is lacking, it is unnecessary to reach this issue.

[6] Gregory also indicates that DCS does not maintain a website, although DCS is listed in Gregory's faculty page on CAU's website. (Gregory Aff. ¶ 17.)

4

CAU's contacts with Ohio. Plaintiff submits that from 2005 to 2010 CAU had total of 382 students from Ohio. (Def.'s Resp. Interrog. 4, ECF No. 65-1.) Accordingly, Plaintiff contends that CAU has received significant financial benefit in the form of tuition from Ohio students. Additionally, Plaintiff stresses that CAU employees have visited college recruitment fairs in Ohio on a regular basis. (*See id.* at Interrog. 5.) Finally, Plaintiff maintains that CAU also seeks donation from Ohio alumni through mailing campaigns.[7] (*Id.* at Interrog. 8.)

## II. Standard

### A. Evidentiary Burden

When a defendant challenges the Court's personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012).

In considering a motion under Rule 12(b)(2) motion, "[a] district court, in its discretion may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (internal quotations omitted). If the Court conducts an evidentiary hearing, the plaintiff must satisfy a preponderance of the evidence standard. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). If the Court

---

[7] Plaintiff also contends that CAU publishes books for nationwide distribution. (Mem. Opp'n 9, ECF No. 65.) CAU contests this assertion. (*See* Reply 9 n. 5, ECF No. 75.) The Court does not find it necessary to resolve this dispute to address the current Motion.

5

considers a Rule 12(b)(2) motion without holding an evidentiary hearing or allowing discovery, a "plaintiff's burden is relatively slight" and the plaintiff must establish only "a *prima facie* showing that personal jurisdiction exists . . . ." *Carrier Corp.*, 673 F.3d at 449 (internal quotations and citations omitted). Under the *prima facie* standard, although the plaintiff may not rest on pleadings alone in the face of the movant's evidence, the Court must "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). At the same time, however, a plaintiff's pleadings must still "have established with reasonable particularity those specific facts that support jurisdiction." *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (internal quotations omitted); *see also Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) (holding, in line with *Ashcroft v. Iqbal*, 556 U.S. 663 (2009), that a court should draw only reasonable inferences from a plaintiff's pleadings in assessing personal jurisdiction).

Even when a plaintiff has conducted jurisdiction discovery, the Court applies a *prima facie* standard in absence of an evidentiary hearing. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Nevertheless, the Sixth Circuit has suggested that this standard "loses some of its significance, however, where . . . the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction." " *Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997); *cf. also Schneider*, 669 F.3d at 697–99 (discussing, but not ultimately deciding, whether there is any exception to the *prima facie* standard when a plaintiff has received discovery concerning personal jurisdiction).

**B.     Requirements for Personal Jurisdiction**

6

When a federal question is the basis for jurisdiction and Congress has enacted a statute allowing for nationwide service of process, "personal jurisdiction exists whenever the defendant has sufficient minimum contacts with the United States to satisfy the due process requirements under the Fifth Amendment." *Carrier Corp.*, 673 F.3d at 449 (internal quotations omitted). When, however, as here,[8] the federal statute in question does not provide for nationwide service, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

As the United States Court of Appeals for the Sixth Circuit has recently noted, "[u]nder Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Moreover, "[u]nlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.*

Accordingly, the Court must also consider whether jurisdiction is proper under the Due Process Clause. As a general matter, "the Due Process Clause requires that the defendant have

---

[8] This Court has federal question jurisdiction in this case, as Plaintiff brings claims pursuant to the Copyright Act and the Lanham Act. Neither of these statutes, however, provide for nationwide service of process. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("The Lanham Act does not authorize nationwide service of process."); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (recognizing that the federal Copyright Act does not provide for nationwide service of process).

7

sufficient minimum contact[s] with the forum state so that finding personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Conn*, 667 F.3d at 712. The Due Process inquiry allows for either general or specific jurisdiction. *Id.* at 712–13. For the purposes of general jurisdiction, a non-resident may be subject to the jurisdiction of the forum state, where his or her contacts "with that state [are] 'continuous and systematic.'" *Id.* at 713 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & n. 9 (1984)).

With regard to specific jurisdiction, the Sixth Circuit generally applies a three-part analysis:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Comty. Trust Bancorp, Inc. v. Comty. Trust Fin. Corp.*, No. 11-6048, — F.3d —, 2012 WL 3608524, at *2 (6th Cir. Aug. 23, 2012) (internal quotations omitted). First, purposeful availment requires "that the defendant's actions create a substantial connection to the forum state, such that the defendant should reasonably anticipate being haled into court there . . . ." *Id.* at *2 (internal quotations omitted). The Sixth Circuit has articulated the second prong of the analysis " in a number of different ways, such as whether the causes of action were made possible by or lie in the wake of the defendant's contacts . . . or whether the causes of action are related to or connected with the defendant's contacts with the forum state." *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553 (6th Cir. 2007) (internal quotations and citation omitted). In other terms, "the exercise of specific jurisdiction only complies with due

8

process if the cause of action . . . ha[s] a substantial connection with the defendant's in-state activities." *Comty. Trust*, 2012 WL 3608524, at *3. If the plaintiff is able to satisfy the first two prongs of the specific jurisdiction assessment, an inference of reasonableness arises, and a defendant must demonstrate that jurisdiction would not comport with "fair play and substantial justice." *Air Prods.*, 503 F.3d at 554 (internal quotations omitted).

Finally, a plaintiff may sometimes satisfy purposeful availment through the effects test enunciated in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, "a plaintiff must show that the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10–cv–155, 2011 WL 6293323, at *8 (S.D. Ohio Dec. 15, 2011) (internal quotations omitted). Although the Sixth Circuit has narrowed its application of the effects test, "the existence of intentional tortious conduct nonetheless enhances a party's other contacts with the forum state for purposes of a purposeful availment analysis." *Air Prods.*, 503 F.3d at 552 (internal quotations omitted). Moreover, this Court has applied the effects test to claims for copyright infringement. *Stolle Mach. Co.*, 2011 WL 6293323, at *8.

### III. Analysis

In this case, as detailed further below, the Court finds that Plaintiff fails to meet her burden of establishing that jurisdiction is proper under the Due Process Clause.[9] First, the Court finds that the moving Defendants activities within Ohio are not sufficient to allow for jurisdiction. Second, applying the *Calder* effects test, the Court still finds personal jurisdiction

---

[9] Accordingly the Court finds it unnecessary to ultimately address whether Ohio's long-arm statute confers jurisdiction.

9

lacking as to the moving Defendants.

## A.  Activities Within the Forum State

Here, Plaintiff has demonstrated that CAU has some, although limited, contacts with Ohio.[10] In particular, the record reflects that a relatively small portion of CAU students since 2005 come from Ohio. (*See* Def.'s Resp. Interrog. 4.) Although CAU does not actively advertise in Ohio, through print or other media forms, it has sent representatives to several college fairs on a near yearly basis since 2005. (*See id.* at Interrog. 5.) CAU also seeks donations from its alumni, including those who live in Ohio. (*Id.* at Interrog. 8.) Finally, CAU operates a general website, but there is no indication that the website specifically targets Ohio residents. (Brinson Aff. ¶ 5.)

In discussing CAU's Ohio contacts, Plaintiff stresses that CAU publishes dissertations of its faculty and students, including Jackson's dissertation, on the internet through Digital Commons.[11] (*See* Ex. J, ECF No. 65-2.) Nevertheless, based on the pleadings and record before it, the Court does not find that such activity is properly characterized as an Ohio contact. Passive internet activity, which does not reach out to a particular forum state, is not generally seen as a significant contact within the due process analysis. *See, e.g., Perrow v. Grand Canyon Educ., Inc.*, No. 2:09-cv-670, 2010 WL 271298, at *4 (S.D. Ohio Jan. 15, 2010) ("Simply maintaining a passive website, however, is not enough: [t]he level of contact with a state that occurs simply from the fact of a website's availability on the internet is . . . an attenuated contact that falls short

---

[10] Plaintiff's briefing is noticeably silent as to Gregory and DCS's contacts with Ohio.

[11] Plaintiff also maintains, and provides some evidence to support, that CAU has published books nationally in the past. (*See* Ex. H, ECF No. 65-2.) Plaintiff does not contend, however, that CAU published Jackson's book *Are Schools Creating a Permanent Underclass.*

of purposeful availment.") (internal quotations omitted).

Moreover, in this case, the pleadings and evidence indicate that Jackson's dissertation was not readily accessible in Ohio. Defendants' jurisdictional discovery responses suggest that CAU limits full text access to the Digital Commons to use inside the library and requires a password that only Atlanta University Center members, and presumably their students and faculty, obtain. (*See* Def.'s Resp. Produc. Req. 20.) Plaintiff's pleadings also suggest that the purpose of the Digital Commons was the exchange of scholarly work between Atlanta University Center members, as opposed to nationwide distribution. (*See* Am. Compl. ¶ 22.) Additionally, the Amended Complaint implies that Plaintiff was unable to obtain a copy of Jackson's dissertation. (*See id.* at 109.) Ultimately, under these circumstances, there is no evidence that, at least through the actions of CAU, anyone actually accessed Jackson's dissertation in Ohio.

The Court finds the moving Defendants' activity in Ohio insufficient to satisfy due process. First, CAU's activity in Ohio is insufficient to confer general jurisdiction. Accepting a relatively small portion of students from Ohio and engaging in limited recruitment and solicitation activities does not lead to the continuous and systematic connection the Due Process requires for general jurisdiction. *See Am. Univ. Sys., Inc. v. Am. Univ.*, No. 3:11–CV–282, — F. Supp. 2d —, 2012 WL 847035, at *6 (N.D. Tex. Mar. 13, 2012) ("In similar cases involving the issue of personal jurisdiction over an out-of-state educational institution, courts have unanimously determined that the institution is not subject to general personal jurisdiction where its only contacts with the forum state are its involvement in activities that are typical of a nationally prominent university."). Second, even assuming CAU's contacts with Ohio are sufficient to meet the purposeful availment requirement, Plaintiff's claims do not arise out of

11

CAU's activity in Ohio. There is no substantial connection between limited recruitment and fund-raising activities in Ohio and Plaintiff's claims for infringement. *See Comty. Trust*, 2012 WL 3608524, at *3 (" It is not enough that there be some connection between the in-state activity and the cause of action—that connection must be *substantial*.") (emphasis in original). Additionally, as detailed above, even viewing both the pleadings and evidence in the light most favorable to Plaintiff, the record does not reflect that CAU reached out to Ohio through its publication and distribution of Jackson's dissertation.

In reaching this conclusion, the Court finds Plaintiff's attempt to connect CAU's Ohio activity to her cause of action unpersuasive. Plaintiff stresses that Jackson plagiarized her work in order to obtain her doctoral degree and eventually become a professor at CAU. Plaintiff further posits that having faculty with advanced degrees makes CAU more attractive to potential students. Consequently, Plaintiff contends that because Jackson was able to obtain a doctorate based on plagiarized work, Jackson's actions, and the actions of other Defendants, are directly linked to CAU's attempts to attract prospective students, including those in Ohio. The Court does not doubt that, on some level, prospective students prefer university's with highly-qualified faculty. Nevertheless, the Court finds this connection far too tenuous to establish that Plaintiff's claims arise from CAU's Ohio contacts. Plaintiff's cause of action arises from the plagiarism of Jackson and the subsequent distribution of his works, not from CAU's recruitment of potential students in Ohio.

**B.     Effects Test**

Because Plaintiff's claims center around intentional tort-type activity, the infringement of Plaintiff's work, the Court has considered whether the effects test alters the above specific

12

jurisdiction analysis. Plaintiff asserts that Defendants are subject to the Court's jurisdiction because they committed tortious acts and they could have reasonably expected injury to occur in Ohio.[12] Although the effects test concerns the purposeful availment portion of the specific jurisdiction analysis, if Defendants did in fact commit tortious activity aimed at Ohio this might also suggest that Plaintiff's claims arise from contacts with Ohio.[13] *Cf. Audsley v. RBS Citizens, N.A.*, No. 5:10–cv–208, 2011 WL 1397312, at *4 (D. Vt. Apr. 11, 2011) ("[S]pecific jurisdiction may exist when a defendant has 'purposefully directed' the harmful effects of his activities at the forum State, and the litigation results from alleged injuries that arise from or relate to those activities.") (internal quotations omitted). Nevertheless, the Court finds that Plaintiff has failed to satisfy the requirements of the effects test with regard to the moving Defendants.

As detailed above, the effects test requires Plaintiff to show that Defendants committed intentional acts, aimed at Ohio, which they knew would likely cause harm in Ohio. *See Stolle Mach.*, 2011 WL 6293323, at *8. Although the Court need not resolve the issue at this time, it is possible that Plaintiff has made a *prima facie* showing—as to these elements—with regard to Defendant Jackson. In particular, given Plaintiff's relationship to Ohio, it is plausible that in plagiarizing Plaintiff's work, Jackson knew that Plaintiff would suffer harm in Ohio. *Cf. Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) (recognizing that the injury from trademark

---

[12] Although Plaintiff does not explicitly raise the *Calder* effects test, she cites Ohio Rev. Code § 2307.382(A)(6), which imposes similar requirements. *See* Ohio Rev. Code § 2307.382(A)(6) (providing that a court may exercise jurisdiction over a person who "caus[es] tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state").

[13] This proposition is perhaps questionable because of the Sixth Circuit's narrowing of *Calder*. *See Air. Prods.*, 503 F.3d at 552–53. Nevertheless, the Court need not decide this issue.

13

violations "occurs [] where the plaintiff does business").

Nevertheless, Plaintiff has failed to demonstrate that Defendants CAU, Gregory, or DCS knew that harm would likely occur in Ohio. From the pleadings and the evidence Plaintiff has provided, the Court cannot reasonably infer that any of the moving Defendants knew of Jackson's plagiarism. Rather, the pleadings fault the moving Defendants for their role in distributing Jackson's work and for alleged negligence in failing to take proper action to detect plagiarism. At best, Plaintiff pleads, in conclusory fashion, that Defendant Gregory was "conscious of but indifferent to [Jackson's] infringing activity . . . ." (Am. Comp. ¶ 75.) Nevertheless, the fact that Gregory was Jackson's advisor during the period of the alleged infringement, the basic facts Plaintiff provides, is not enough for the Court to infer knowledge on the part of Gregory. Furthermore, even assuming Plaintiff has sufficiently pled that Gregory had some level of awareness regarding Jackson's plagiarism, this still does not establish that Gregory knew that harm would occur in Ohio due to this plagiarism.

Plaintiff has also failed to provide sufficient grounds for imputing Jackson's knowledge and intentional actions to the moving Defendants pursuant to traditional notions of respondeat superior.[14] The Court recognizes that agency principles generally apply for the purpose of assessing personal jurisdiction. *See Stolle Mach.*, 2011 WL 6293323, at *8 ("An agent's contacts with a forum may be imputed to the principal for purposes of establishing personal jurisdiction."). Nevertheless, an employer is not generally vicariously liable for the intentional

---

[14] The Court makes this observation only for the purposes of assessing personal jurisdictions and in no way intends to speak to the merits of Plaintiff's claims.

14

torts of its employees.[15] *See, e.g.*, *Vaughn v. Rent-A-Center, Inc.*, No. 2:06–cv–1027, 2009 WL 723166, at *12 (S.D. Ohio Mar. 16, 2009) (holding, "[u]nder Ohio law, an employer is only liable for an intentional tort committed by his employee if (1) the tort was committed within the scope of employment; and (2) the behavior giving rise to the tort was calculated to promote the employer's business") (citing *Byrd v. Faber*, 57 Ohio St.3d 56, 58 (Ohio 1991)). Here, the Court cannot reasonably infer from the pleadings and evidence that Jackson was acting within the scope of his employment with CAU in plagiarizing Plaintiff's work. Rather, Plaintiff pleads, and provides evidence to support the notion, that plagiarism was explicitly prohibited under CAU's policies and code of conduct. (*See, e.g.*, Exs. J, K, ECF Nos. 31-11, 31-12.) Accordingly, Jackson's conduct is insufficient to satisfy the effects test as to the moving Defendants.

Ultimately, under both a general contacts analysis and in light of the *Calder* effects test, Plaintiff has failed to meet her burden of demonstrating that jurisdiction is proper under the Due Process Clause. Accordingly, the Court finds that Defendants CAU, Gregory, and DCS have insufficient contacts with Ohio to allow for personal jurisdiction.

## IV. Conclusion

For the foregoing reasons, Defendants Sheila T. Gregory, Ph.D., Dissertation Coaching Services, and Clark Atlanta University, Inc.'s Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and Improper Venue is **GRANTED**. (ECF No. 38.) Additionally, the Motions to Dismiss for Failure to State a Claim of Gregory, DCS, and CAU, are **DENIED WITHOUT PREJUDICE** as moot in light of this Opinion and Order. (ECF Nos. 36, 37.) The

---

[15] The Court assumes, without deciding, that Jackson is properly classified as an employee of CAU.

15

Clerk is **DIRECTED** to terminate Defendants Sheila T. Gregory, Ph.D., Dissertation Coaching Services, and Clark Atlanta University, Inc. from the Court's docket.

**IT IS SO ORDERED.**

__10-4-2012__
**DATE**

_____
EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE